William G. JESSEN, Plaintiff,

v.

VILLAGE OF LYNDON STATION; Law Enforcement Standards Board; Howard Bjorklund, individually and as Administrator and Secretary of the Law Enforcement Standards Board; William A. Harvey, individually and as Chairman of Law Enforcement Standards Board, Defendants.

No. 81–C–371.

United States District Court,
W. D. Wisconsin.

July 31, 1981.

**1184**

Daniel W. Hildebrand, James R. Cole, Ross & Stevens, Madison, Wis., for plaintiff.

Nadim Sahar, Asst. Atty. Gen., Madison, Wis., and Thomas J. Curran, Mauston, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

This is a civil action for injunctive relief brought pursuant to 42 U.S.C. § 1983, with jurisdiction premised on 28 U.S.C. §§ 1331 and 1343. Presently before the court is plaintiff's motion for a preliminary injunction enjoining defendants from causing plaintiff's employment to be terminated without a pretermination hearing. The parties have presented their arguments on this motion in written briefs and at a non-evidentiary hearing on July 17, 1981.

From the papers filed in this case, as well as from the oral arguments, it appears that the material facts are not in issue. Based on the entire record, I find that for purposes of deciding this motion, there is no genuine issue as to the material facts set forth under the heading "Facts."

## FACTS

On April 27, 1973, plaintiff Jessen was convicted in a Wisconsin state court of 26 felony counts of misconduct in public office. The acts for which he was convicted consisted of falsifying traffic citations while serving as chief deputy sheriff of Juneau County, Wisconsin. Plaintiff was sentenced to 26 concurrent one-year terms for each conviction, but the sentences were stayed and he was placed on probation for two years. Plaintiff completed his probation and received a Certificate of Discharge from the Wisconsin Department of Health and Social Services, effective June 5, 1975.

On September 30, 1974, the Village Board of Lyndon Station, Wisconsin, appointed plaintiff as chief of police, sanitary landfill attendant and sewer operator. The initial appointment was for a six-month probationary period. At the time of the appointment, board members were aware of plaintiff's convictions for misconduct in public office, but the members and Jessen believed that the convictions were misdemeanors.

At the time of the appointment of Jessen, the village board did not notify the Wisconsin Law Enforcement Standards Board or the Training and Standards Bureau of plaintiff's appointment and it did not submit an "Application for Enrollment in a Training and Standards Program" form DJLE–303 to the board or bureau.

The board and the bureau learned of plaintiff's appointment as police chief through their field representatives. By letter dated October 14, 1974, the director of the Training and Standards Bureau informed the mayor of the Village of Lyndon Station that the village was required to submit the form DJLE–303 so that the bureau could assess plaintiff's eligibility and qualifications to be chief of police. By letter dated November 18, 1974, an assistant attorney general of the State of Wisconsin informed the mayor that the form had to be submitted, and that if it was not submitted, the assistant attorney general would seek a court order compelling submission. On or about December 2, 1974, the bureau received the requested form.

Based upon the information provided in the form, the Law Enforcement Standards Board determined that plaintiff did not meet the minimum eligibility requirements to be a law enforcement officer because of his prior felony convictions. The board refused to certify plaintiff as eligible to serve as a law enforcement officer, and the board continues to refuse to certify plaintiff as eligible.

By letter dated December 9, 1974, an assistant attorney general informed the mayor of Lyndon Station of the board's determination that plaintiff was ineligible for appointment as a law enforcement officer. The village did not accept the board's determination and refused to terminate plaintiff's appointment. By letter dated

January 2, 1975, an assistant attorney general reiterated the board's position that plaintiff was not eligible to serve as a law enforcement officer.

On March 24, 1975, the village board considered plaintiff's employment and determined that he had performed well as police chief, and the board terminated plaintiff's probationary status and hired him to serve on a full-time basis, effective April 1, 1975. The village and plaintiff entered into an employment agreement effective April 1, 1975. The agreement included provisions that plaintiff could be removed only for cause, and that plaintiff would not be removed "except upon notice and hearing before an impartial decision-maker appointed by the Village Board."

In July, 1977, the Law Enforcement Standards Board petitioned the Circuit Court of Juneau County for a writ of mandamus compelling the village to remove plaintiff as chief of police. The circuit court granted the writ and its decision was subsequently affirmed by the Wisconsin Court of Appeals and the Wisconsin Supreme Court. *Wis. Law Enforce. Stds. Bd. v. Lyndon Station Vil.*, 98 Wis.2d 229, 295 N.W.2d 818 (Ct.App.Wis.1980), *aff'd,* 101 Wis.2d 472, 305 N.W.2d 89 (1981).

Plaintiff was not a party to any of the proceedings in the state courts. The state supreme court denied his request to intervene in the case, but the court did allow plaintiff to file an *amicus curiae* brief. Plaintiff has not been afforded any kind of hearing regarding termination of his job as chief of police. The board has made no provision for either a pre-termination or a post-termination hearing or proceeding to which plaintiff would be a party.

Since commencing employment as chief of police of Lyndon Station, plaintiff has performed his duties satisfactorily. Plaintiff has participated in criminal investigations and his testimony will be necessary at trial. Plaintiff is 54 years old, and earns $700 per month from his job as police chief, sanitary landfill attendant and sewer operator. Plaintiff supports his wife and one minor child.

OPINION

"The purpose of a preliminary injunction is to preserve the object of controversy in its then existing condition, *i. e.*, to preserve the status quo." *Equal Emp. Opp. Com'n v. City of Janesville,* 630 F.2d 1254, 1259 (7th Cir. 1980) (citation omitted). In order to succeed on his motion for a preliminary injunction, plaintiff must show 1) a reasonably good chance to succeed on the merits of his complaint; 2) a significant threat of irreparable harm to plaintiff if the injunction is not granted; 3) that the balance of harms to defendants and plaintiff if an injunction is or is not issued favors issuance; and 4) that the public interest will not be disserved by issuance of the injunction. *American Dairy Queen v. Brown-Port Co.,* 621 F.2d 255, 257 (7th Cir. 1980); *Banks v. Trainor,* 525 F.2d 837, 841 (7th Cir. 1975) *cert. denied,* 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976).

Plaintiff bases his motion for a preliminary injunction on both substantive and procedural arguments.

### A. Equal Protection

Plaintiff claims that the rule under which the Law Enforcement Standards Board operated to determine that plaintiff was not eligible to be a law enforcement officer is unconstitutional as a violation of his right to equal protection under the law. Plaintiff is unlikely to succeed on the merits of this claim.

Pursuant to Wis.Stats. § 165.85, the Wisconsin Law Enforcement Standards Board may establish criteria governing who may be law enforcement officers in the state. The board has adopted a rule providing that

> The applicant [for a position as a law enforcement officer] shall not have been convicted of any federal felony or of any offense which if committed in Wisconsin could be punished as a felony unless the applicant has been granted an absolute and unconditional pardon.

Wis.Adm.Code LES 2.01(1)(d).

In its decision affirming the issuance of a writ of mandamus requiring the Village of Lyndon Station to discharge plaintiff, the

Supreme Court for the State of Wisconsin construed this administrative rule as disqualifying from positions as law enforcement officers those persons who have been convicted of felonies which bear "a substantial relationship to the duties of a police officer." *Law Enforce. Stds. Bd. v. Lyndon Station*, 101 Wis.2d at 490–92, 305 N.W.2d 89. (In the same opinion, the court held that the felonies of which this plaintiff was convicted bore a substantial relationship to his job as a police officer.)

Because it appears that neither a fundamental right nor a suspect class (e. g., classification based on race) is involved in this case, it is likely that a "rational basis" standard of review will be applied to the rule attacked by plaintiff. *See e. g., Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). Under the rational basis test, plaintiff's chance of success on the merits of his equal protection claim is dubious at best, particularly in light of the Wisconsin supreme court's construction of the rule under attack. Accordingly, plaintiff's equal protection claim does not entitle him to a preliminary injunction.

### B.  Due Process: Liberty Interest

■  Plaintiff claims that he has a right to procedural due process before he may be terminated from his position as police chief. He contends that the proposed termination is stigmatizing in that it calls into question his good name, honor and integrity, and forecloses his future chances of employment and, therefore, impinges upon a liberty interest requiring due process protection. *Bd. of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). It is unlikely that plaintiff will succeed on the merits of this claim. While it may be difficult for plaintiff to find employment of any kind if terminated from his job as police chief, nothing in the complaint or the record indicates that it is the defendants' actions that have the effect of foreclosing his employment opportunities or of calling his good name into question. Whatever stigma or impediment attaches to plaintiff's termination will derive from his previous felony

convictions and not from any actions or statements of these defendants.

In any event, plaintiff does not challenge the factual basis for defendants' actions; that is, he does not deny that he was convicted of felonies. *Cf., Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam). To order defendants to provide him a hearing on this issue would be meaningless. Accordingly, I conclude that plaintiff's claim of violation of his right to due process based on a liberty interest does not entitle him to a preliminary injunction.

### C.  Due Process:  Property Interest

■  The March, 1975 contract of employment between plaintiff and defendant Lyndon Station is the starting point for determining whether plaintiff had a constitutionally-protected property interest in continued employment as police chief.

To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expection of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Property rights, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understanding that secure certain benefits and that support claims of entitlements to those benefits.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Uptown People's Com., etc. v. Bd. of Com'rs, etc.*, 647 F.2d 727, 734 (7th Cir. 1981).

In this case, plaintiff and defendant Lyndon Station entered into a contract of permanent employment, providing that plaintiff could be removed only for cause after a

hearing. Considered alone, these provisions would allow plaintiff more than a "unilateral expection" of continued employment. The contract on its face appears to give plaintiff a constitutionally protected property interest in continued employment as police chief of Lyndon Station. *Perry v. Sinderman*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972) ("A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a . . . claim of entitlement to continued employment unless sufficient 'cause' is shown.") *Compare Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (no property interest where employment terminable at will of employer).

Defendants argue that because plaintiff has no legitimate claim of entitlement to his position as chief of police, he has no property interest protected by due process:

> Having never been certified by the Board as eligible and qualified to be the Chief of Police, a statutory prerequisite to being appointed, Jessen has never been lawfully hired as Chief of Police. Since he was not lawfully appointed and since he did not meet the minimum eligibility requirements, Jessen has no legitimate claim of entitlement to the Police Chief position.[1]

Defendants argue further that because plaintiff was never certified by the board, the contract of employment between the village and plaintiff violated Wis.Stats. § 165.85(3)(c) and (4)(b) and, therefore, the contract "must be deemed null and void and unenforceable."

Defendants' argument is based on an attack of an employment contract made between plaintiff and the village in 1978. Defendants suggested in their brief and at oral argument that this contract was made in a bad faith attempt to create a property interest for plaintiff "as a means for him to claim a right to a pre-termination due process hearing." There is some evidence in the record that an employment contract was made in 1978. However, that contract is not a part of the record. As noted in the findings of fact, plaintiff and the village entered into a contract of permanent employment effective April 1, 1975. Thus, it appears that defendants' allegations of bad faith in connection with the 1978 contract are unfounded and need not be considered in deciding this motion. I will consider defendants' argument that the April, 1975 contract of employment is null and void.

There is no evidence in the record to suggest that plaintiff had any reason to doubt the validity of his contract of employment. Whether he knew of the exchange of letters among the board, the assistant attorney general and the mayor of the village is a question not answered on this record. Even if he did know of the content of the letters from the board, plaintiff also knew that the board waited more than two years after the exchange of letters before seeking a court order requiring the village to remove him from his position. Under these circumstances, it cannot be said that plaintiff's expectation of entitlement to his job was diminished by any of his actions or knowledge.

At this stage of the proceeding, it does not seem proper to determine the validity of the contract of employment entered into between the village and plaintiff. I do not know what effect the contract might be given under Wisconsin law. It does, however, seem peculiar for defendants in this case to argue that plaintiff has no legitimate property interest in a contract entered into with an employer because the employer acted improperly. This is particularly true with respect to defendant Lyndon Station, the employer. Moreover, I note that the Wisconsin Supreme Court expressly declined to consider issues regarding what constitutional protection plaintiff might have before he could be terminated from his job as police chief. *Law Enforce. Stds. Bd.*, 101 Wis.2d at 497, 305 N.W.2d 89.

---

1. This argument is made by counsel for defendants Law Enforcement Standards Board, Bjorklund and Harvey. Defendant Lyndon Station *did not file a written brief in opposition to the* motion for preliminary injunction. However, at oral argument on the motion for preliminary injunction it appears that counsel for Lyndon Station agreed implicitly at least with the contention quoted in the text.

Accordingly, I find that the April, 1975, contract of permanent employment constituted a property interest which could not be taken from plaintiff without due process protection.

### 1. Chance of Success on the Merits

Having concluded that plaintiff has a constitutionally-protected property interest in continued employment as chief of police, I must determine whether he has a reasonable chance of success on the merits of his claim that he cannot be terminated from that position without a hearing.

■ In cases in which employees have been suspended from public employment, it is clear that the lack of a pre-suspension hearing, at least where employees are entitled to a prompt post-suspension hearing, does not violate the employees' right to due process of law. *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); *Ciechon v. City of Chicago*, 634 F.2d 1055 (7th Cir. 1980).

In *Barry v. Barchi*, the Court considered a New York statute which authorized a summary suspension, without a hearing, of horse trainers in whose horses the presence of drugs was found after a post-race test. Under the statute, a suspended trainer was entitled to a post-suspension hearing, but the statute specified no time limit within which the hearing must be held. The Court upheld the statute insofar as it allowed suspensions without hearings, but invalidated the statute on the ground that the horse trainer was not provided with a prompt post-suspension hearing. *Barry v. Barchi*, 443 U.S. at 66, 99 S.Ct. at 2650.

The *Barry v. Barchi* case is instructive with respect to the merits of plaintiff's due process, property interest claim. Pursuant to the order of the state courts, plaintiff is to be terminated rather than suspended from his job. Moreover, there is no provision of any kind for a post-termination hearing. Under these circumstances, I find that plaintiff has a substantial likelihood of success on the merits of his due process claim.

### 2. Irreparable Harm

In order to prevail on his motion for a preliminary injunction, plaintiff must also show that if the injunction does not issue, he will suffer irreparable harm. In this case, plaintiff claims irreparable harm based on the fact that if terminated, he will no longer be able to obtain employment as a police officer in Wisconsin, he will have lost permanent employment, and he will have lost the ability to support his family. Plaintiff argues also that "[t]here are no backpay or other speedy and effective remedies which are readily available to him."

■ Loss of pay and difficulty in finding other employment may not alone be sufficient to show irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 88–92, 94 S.Ct. 937, 951–54, 39 L.Ed.2d 166 (1974); *Ekanem v. Health & Hospital Corp. of Marion Cty.*, 589 F.2d 316, 321–22 (7th Cir. 1978) (per curiam).

In *Sampson*, the discharged probationary employee had worked for the federal government, and the Court noted that if she had been discharged improperly, she would be entitled to back pay under the Back Pay Act, 5 U.S.C. § 5596. *Sampson*, 415 U.S. at 75, 94 S.Ct. at 945–46. This statutory remedy, available to certain federal employees, coupled with various administrative remedies open to the discharged employee, undercut her claim of irreparable injury. Thus, the Court overturned an order requiring that she be reinstated to her former employment.[2]

---

2. In a case brought by a federal employee who was to be discharged, the court of appeals for this circuit summarized the holding in *Sampson v. Murray*:

> [T]he [C]ourt held that a government employee seeking to restrain his discharge does not, in the absence of extraordinary circumstances, show "irreparable injury" sufficient to justify the issuance of a preliminary injunction *if he may obtain complete retroactive relief in an administrative proceeding or a subsequent judicial review of the administrative proceeding.*

*Deliberti v. Brown*, 583 F.2d 950, 951 (7th Cir. 1978) (emphasis added). In the case at bar, plaintiff is a non-federal employee who has no administrative proceeding available to him.

Similarly, in *Ekanem,* the court overturned an order requiring that Ekanem be reinstated to employment from which he had been discharged. The court noted that "Ekanem waited fourteen months after filing his lawsuit before he sought a preliminary injunction, thus undercutting any claim of irreparable harm." *Ekanem,* 589 F.2d at 321 (footnote omitted). The court concluded:

> The reinstatement remedy is permissible only in the most extraordinary cases. *Sampson v. Murray, supra.* Here neither Mrs. Marshall nor Mr. Ekanem proved a substantial likelihood of success on the merits or irreparable injury. Therefore, the granting of the preliminary injunction was a clear abuse of discretion.

*Id.* at 322.

Implicit in both *Ekanem* and *Sampson* is the notion that reinstatement is an extraordinary remedy, and that preliminary relief affording that remedy must be based on a showing of extraordinary circumstances above and beyond those which might support an order preserving the status quo. *See e. g., Equal Emp. Opp. Com'n v. City of Janesville,* 630 F.2d at 1259. The distinction between relief granting reinstatement and relief preserving the status quo is significant in this case, where plaintiff presently remains on the job. It appears that relief aimed at preserving the status quo is in some measure less "extraordinary" than relief ordering reinstatement.

█ Moreover, in the case at bar plaintiff will suffer more than mere loss of employment and wages if preliminary relief is not granted. It is at least questionable whether plaintiff could collect back pay and damages in this case. *See e. g., Savage v. Com. of Pennsylvania,* 475 F.Supp. 524, 532–34 (E.D.Pa.1979) *aff'd without opinion,* 620 F.2d 289 (3d Cir. 1980) (raising questions of Eleventh Amendment and good faith immunities as potentially barring award of damages in suit brought by state employee seeking reinstatement; injunction issued);

*Schrank v. Bliss,* 412 F.Supp. 28, 28–40 (M.D.Fla.1979). More importantly, without preliminary relief, plaintiff will be terminated immediately from permanent employment without the procedural protections mandated by the due process clause of the Fourteenth Amendment to the Constitution of the United States. Under these circumstances, it appears that plaintiff will lose his right to due process of law, and that such a loss cannot be adequately compensated. That is, even if plaintiff can prevail ultimately in this case, he still will have lost his constitutional right to a pretermination hearing, and there is no adequate means of restoring that right once the loss is suffered. *See* Wright & Miller, Federal Practice and Procedure: Civil, § 2948 at 440 ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary"); *Oshiven v. Court of Common Pleas,* 469 F.Supp. 645, 654 (E.D.Pa. 1979) (denial of equal protection may constitute irreparable harm; preliminary injunction issued); *Faulkner v. North Carolina Dept. of Corrections,* 428 F.Supp. 100, 103–04 (W.D.N.C.1977) (ongoing deprivation of constitutional rights protecting liberty and property interests caused irreparable harm; preliminary injunction issued). *See also Gonzalez v. Chasen,* 506 F.Supp. 990, 997–98 (D.P.1980) (irreparable harm found in case involving dismissal of law enforcement employee; *Sampson v. Murray* distinguished). *Cf. Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 ("The loss of First Amendment freedoms, for even minimal period of time, unquestionably constitutes irreparable injury.") [3]

### 3. Balance of Interests

At oral argument, counsel for defendants contended that the state has a valid interest in making sure that qualified persons serve as law enforcement officers. Defendants' counsel also pointed out that if plaintiff

---

**3.** I am aware of the fact that *Elrod v. Burns* involved a case in which First Amendment rights were implicated, and that courts often give First Amendment values preferred or special status. However, it does not follow from the fact that First Amendment values are often given special status that other fundamental constitutional rights must necessarily receive less protection in all instances.

were to remain on the job, and it became necessary for him to testify in criminal prosecutions, his credibility could be impeached by use of his prior felony convictions.

The record in this case reflects that plaintiff has performed his job in a manner satisfactory to the Village of Lyndon Station. The record also shows that plaintiff already is involved in cases in which his testimony may be necessary.

The fact that plaintiff satisfactorily has performed his job as police chief for more than six years, coupled with the fact that he presently remains on the job, leads me to conclude that neither the defendants nor the public will be harmed by an injunction requiring that plaintiff not be fired before receiving a due process hearing. These factors, balanced against the harm resulting from the loss of plaintiff's constitutional right to a pre-termination hearing, lead me to conclude that the injunction in this case should issue, and that the public interest will not thereby be disserved.

### D. What Process is Due

■ There are no established procedures applicable to every case in which due process rights are implicated. "Instead, [due process] is a flexible concept that requires such procedural protections as the particular situation demands." *Holbrook v. Pitt,* 643 F.2d 1261, 1280 (7th Cir. 1981), *citing Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

In order to determine what process is due in this case, the court must balance the interests of plaintiff and defendants. *Holbrook,* 643 F.2d at 1280; *Winston v. United States Postal Service,* 585 F.2d 198, 209 (7th Cir. 1978).

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Accord, Winston,* 585 F.2d at 209.

In the case at bar, plaintiff's interest in receiving the procedural protection mandated by the Constitution is substantial. From plaintiff's perspective, there have been no procedures, and will be no procedures, employed with respect to terminating his employment. Requiring that the state provide procedural safeguards to protect the sort of property interest at stake in this case imposes little significant burden on the state. Moreover, the state has little interest in finally terminating a constitutionally-protected interest without providing procedural safeguards.

Due process dictates that plaintiff receive notice of the charges against him. *Holbrook,* 643 F.2d at 1280. In addition, plaintiff must be afforded a hearing before his employment is finally terminated, since the "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. at 333, 96 S.Ct. at 902 (citations omitted). Plaintiff should be allowed the right to present evidence, the right to be heard in person, the right to present and cross-examine witnesses, a neutral and detached decision-maker, and a written statement of the evidence relied upon. *See Morrissey v. Brewer,* 408 U.S. at 489, 92 S.Ct. at 2604; *Greene v. McElroy,* 360 U.S. 474, 497, 79 S.Ct. 1400, 1413–14, 3 L.Ed.2d 1377 (1959); *Morgan v. United States,* 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938); *Weyenberg v. Menasha,* 401 F.Supp. 801, 803 (E.D.Wis. 1975).

The requirement that defendants in this case afford plaintiff due process protections

does not mean that plaintiff is entitled to define the issues to be considered at the due process hearing. Nothing in this order is intended to indicate in any fashion that defendants are not free to apply Wis.Adm. Code LES 2.01, as construed by the Wisconsin supreme court, to the facts of plaintiff's employment in order to reach a decision on whether he should be allowed to continue as police chief. It is conceivable that the board and the village will consider themselves bound by the Wisconsin supreme court's statements that the felonies of which plaintiff was convicted were substantially related to his performance as a law enforcement officer. But I can neither predict whether defendants will believe themselves so bound, nor determine whether defendants in fact are so bound. Indeed, it is possible that after affording plaintiff an opportunity to be heard and considering all the evidence presented, defendants will conclude that the felonies were not substantially related to plaintiff's performance as police chief.

### ORDER

Accordingly, IT IS ORDERED that plaintiff's motion for a preliminary injunction is GRANTED, and that defendants are enjoined from terminating plaintiff's employment as chief of police of Lyndon Station pending a final determination of the issues in this lawsuit, or until such time as defendants afford plaintiff a hearing meeting the due process requirements described in this order.