Chester **FOLAK**, Plaintiff,

v.

**SHERIFF'S OFFICE OF COOK COUNTY, et al., Defendants.**

No. 83 C 4005.

United States District Court, N.D. Illinois, E.D.

Jan. 26, 1984.

Jeffrey B. Steinback, Chicago, Ill., for plaintiff.

Robert J. Tonos, Asst. State's Atty., Richard M. Daley, Cook County State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Chester Folak ("Folak") filed a Complaint and then a First Amended Complaint (for convenience the latter will be termed

the "Complaint") asserting one of the classic causes of action under 42 U.S.C. § 1983 ("Section 1983"): Folak alleged his employers (Sheriff's Office of Cook County[1] and Sheriff Richard J. Elrod (collectively "Elrod")), in firing him as a Deputy Sheriff, deprived him of a property interest in public employment without a hearing. Elrod has filed a non-classic response: a 50-page factual stipulation by Folak, publicly filed in the criminal case *United States v. Folak*, No. 82 CR 467 (N.D.Ill. Nov. 1, 1983), in which Folak admitted to facts underlying numerous counts of alleged mail fraud (18 U.S.C. § 1341) and extortion (18 U.S.C. § 1951) perpetrated in the course of his employment.

In light of Folak's stipulation Elrod offers two motions:

 1. one under Fed.R.Civ.P. ("Rule") 12(b)(6) for the Complaint's dismissal for failure to state a claim upon which relief can be granted;[2] and

 2. the other under (a) Rule 11 or (b) the bad faith exception to the American Rule or (c) 28 U.S.C. § 1927 ("Section 1927") or a combination of them, for imposition of attorneys' fees and other sanctions on Folak and his attorney Jeffrey B. Steinback ("Steinback") for bringing this action vexatiously, unreasonably and in bad faith.

Despite Elrod's indignation at being haled into court by a former employee who has admitted official malfeasance, he has not established the bad faith of either Folak or Steinback. Though Elrod ultimately prevails on his motion to dismiss, his sanctions motion is denied.

### Facts[3]

Folak was a Cook County Deputy Sheriff from 1971 to March 1983, when he was fired without written notice or a statement

---

1. In addition to the issues discussed in the text, defendants contend the Sheriff's Office is not a suable entity. See *Mayes v. Elrod*, 470 F.Supp. 1188, 1192 (N.D.Ill.1979). This opinion obviates any need to resolve that issue.

2. In conjunction with their supporting memoranda the parties have submitted public documents (such as the *United States v. Folak* stipulation and General Orders of the Sheriff's Court Services Department). Those may be considered by the court's taking judicial notice on a motion to dismiss under *Newcomb v. Brennan*,

558 F.2d 825, 829 (7th Cir.), *cert. denied*, 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977), or alternatively by considering the motion as a Rule 56 summary judgment motion (see the last sentence of Rule 12(b)).

3. Although some public documents are in evidence (see n. 2), the Complaint's well-pleaded allegations are accepted as true and "construed in the light most favorable to the plaintiff." *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir.1977).

of reasons for his termination. Elrod's failure to afford Folak procedural safeguards before termination was allegedly in contravention of Elrod's commitment, voluntarily undertaken in General Order 7000 of the Court Services Department (the "Order"),[4] to provide Folak notice and a hearing on the reasons for termination. Elrod's position, that the Order's language establishes as a matter of law its inapplicability to Folak's termination, is considered below in the discussion of controlling legal principles.

Folak was indicted July 6, 1982 on numerous counts of mail fraud and extortion. On February 28, 1983 he stipulated to the facts underlying the indictment. Elrod dismissed him from his job the following month. Judge McMillen later tried Folak and his co-defendants via a "stipulated bench trial" (based solely on the facts agreed upon in the stipulation, without presentation of other evidence). Folak's defense was that the facts as stipulated did not constitute federal offenses. Judge McMillen's November 1, 1983 decision credited Folak's defense on 11 counts but convicted him on the remaining 28.

Because Folak was not convicted until after he had been fired, Elrod's argument for the propriety of the firing is based not on the conviction but on the stipulation. That stipulation undeniably

constitutes good cause for dismissal. For example, describing the stipulated facts regarding two of the counts on which Folak was found guilty,[5] Judge McMillen wrote (slip op. at 30–31):

> Counts Thirty Nine and Forty involve a seizure warrant of the Department of Revenue against the William Tell II, Inc. for $106,772.72, assigned to defendant Folak. Defendant [Hyman] Schmidt went to the premises on July 30, 1980, and the owner Louis Patras told Schmidt that he intended to make a partial payment of $25,000 to the Department of Revenue that day. Schmidt suggested that they make their own deal, and defendant Folak then came to the premises. Folak and Schmidt advised Patras to change the name of the corporation and give them a $10,000 check payable to Gebel Liquidators and $5,000 in cash.
>
> \* \* \* \* \* \*
>
> No arm's length sale or auction was held, the warrant was not in fact executed, and the restaurant continued in operation under its original name during the entire period. No remittance was made of the $5,000 cash which was paid by Patras to the two defendants and to Gebel.

### Property Interest in Continued Employment

Folak disavows any assertion he has been deprived of a liberty interest.[6] In-

---

4. Folak originally alleged the salient order was General Order 75–7, but as Elrod points out General Order 7000 has superseded it without substantial change.

5. Indeed, the facts underlying counts on which Folak was *not* convicted are hardly less damaging than those on which he was. Thus Judge McMillen described the facts underlying one count and the basis on which he acquitted Folak on that count (slip op. at 20–21):

 > Count Twenty Four charges defendants Folak and [Marvin] Grulke with mail fraud arising out of a Department of Revenue Seizure warrant against Norris S. Hunt for $219,870.56. The warrant was assigned to Folak who went to the business premises and told Hunt that his business was being seized and that the perishable items would be sold within 24 to 48 hours. Mr. Hunt estimated their wholesale value to be between $4,000 and $5,000 at that time.

 > Hunt's attorney subsequently saw defendant Grulke and others removing a substantial amount of merchandise from the premises. The remaining perishables were sold at auction and removed. No proceeds from the auction of the perishable items were remitted.

 > On September 6, 1979 a Report of Seizure was mailed to the Illinois Department of Revenue remitting a net amount of $9,830.16 for the actual sale of the nonperishables to Lula Jones (Government Ex. 24–5). No mailing was made with respect to the auction of the perishable items. We find and conclude that the mailing which was caused to be made by defendant Folak on September 6, 1979 was not in furtherance of the sale or theft of the perishable items, and that no mailing was made thereon. We find defendants Folak and Grulke *not guilty* on Count Twenty Four of the indictment.

6. Given Folak's concession of the truth of the allegations against him, *Codd v. Velger,* 429 U.S.

stead he contends the Order, entitled "Complaint and Disciplinary Procedures," conferred on him a property interest in his continued employment in the Court Services Department—an interest that could be taken away *only* by following the procedures outlined in the Order. Certainly the Order provides at least a foundation for the proposition Folak had a property interest in continued employment. If the phrase "complaints and disciplinary actions" is defined to include Folak's dismissal, Order ¶ II would support the existence of that property interest:

> II. PURPOSE. This order sets forth procedures for handling complaints and disciplinary actions against members of the Court Services Department and sets forth an Appeal Procedure for the accused member.

Moreover the Order may at least arguably be considered one of the "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits" (*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)), and therefore capable of conferring a property interest under Section 1983 and the Due Process Clause.

Elrod sums up his contrary position on the property interest issue this way (R.Mem. 2):

> General Order 7000 defines procedures for investigation of complaints and resulting discipline, one form of which may be termination. The procedure does not purport to govern all terminations, is not stated to be a right of all terminated deputies, and creates no property interest in employment.

Again that contention is a tenable one. It is not certain that the Order *must* be followed for all terminations. Resolution of that question—giving definitive content to the phrase "complaints and disciplinary actions"—requires more than a bare reading

of those words: perhaps extrinsic evidence as to the scope of the Order [7] or considerations of state law not yet submitted by the parties. On the latter score, compare the Order with the ordinances permitting dismissal from public employment in *Bishop v. Wood,* 426 U.S. 341, 344 n. 5, 96 S.Ct. 2074, 2077 n. 5, 48 L.Ed.2d 684 (1976) and *Brockert v. Skornicka,* 711 F.2d 1376, 1383–84 (7th Cir.1983) (the District Court's opinion, adopted and reprinted by the Court of Appeals).

Consequently at this threshold pleading stage this Court has not been afforded enough input to give a final reading. It suffices for present purposes to say (as is clearly true) Folak *might* establish facts showing he had a property interest in continued employment.

### What Process Is Due

At this stage it must also be assumed for argument's sake that Elrod did not follow the procedures set forth in the Order. Folak urges such a failure, combined with his alleged property interest in continued employment, constitutes deprivation of procedural due process in support of his Section 1983 claim. But that position fundamentally misconstrues the nature of such rights under the Due Process Clause.

■ Assurances like the Order, promising continued benefits from the governmental employer until terminated under specified procedures, support claims of property interest—but they are not conclusive as to what process is due. *Bishop,* 426 U.S. at 344–47, 96 S.Ct. at 2077–79; *Roth,* 408 U.S. at 577–78, 92 S.Ct. at 2709–10. Failure to follow prescribed procedures does not always equate with deprivation of the property interest without due process. Rather, as summarized in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), what process is due depends on (1) the private inter-

---

624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam) establishes he would have no right to a hearing to vindicate any liberty interest he might have.

**7.** Folak submitted a newspaper article (inadmissible as evidence, of course) from the Chicago

*Sun-Times,* Oct. 20, 1983, at 4 col. 1. That article suggests Undersheriff Ralph Axelrod might be called to testify that full-time employees are entitled to hearings before dismissal.

est affected, (2) the risk of an erroneous determination both under the challenged governmental course of action and under a system using additional procedural safeguards and (3) the government's interest in following the challenged course of action.

 Two recent cases from our own Court of Appeals establish Folak in fact received all the process he was due. Though they speak to different issues, they point to the same result.

First, in *Brockert* (711 F.2d at 1386) further hearings on an employee's termination were held to serve no useful purpose because he conceded the facts the hearing would be required to prove. In our case Folak stipulated to many more instances of misconduct than would be required to justify his dismissal. To force a formal hearing, with its preordained conclusion, would serve only to waste Elrod's limited resources to no constructive end.[8] Any *Mathews v. Eldridge* balancing on the question whether further process is due must tip in Elrod's favor.

Second, *Simmons v. Drew*, 716 F.2d 1160 (7th Cir.1983) holds a judicial determination can take the place of an administrative proceeding. There a public housing authority ("PHA") expelled plaintiff without a hearing for sharing her apartment with too many people, but a state court had already evicted her from her apartment for the same reason. Our Court of Appeals wrote (*id.* at 1163):

Since there is no reason to suppose that the Milwaukee PHA is in a better position than a court to determine how many people are living together under one roof or that Williams was prevented from presenting fully to the court her version of the facts, the Milwaukee PHA was not constitutionally required to afford her a second hearing before or after it decided to expel her.

True enough, the *Simmons* defendants relied on a final judicial determination, while Folak was dismissed in the midst of the proceedings against him. But Folak did stipulate to his own wrongful conduct, choosing to urge only that conduct was not a federal offense. Judge McMillen ultimately rejected Folak's position, but even if he had not (or if Folak's conviction is some day reversed on appeal), the stipulation would still establish Folak's wrongdoing. Once again the issue would be restricted to that discussed at n. 8.

In a nearly identical case recently decided by this Court's colleague Judge Moran, *Greene v. Finley*, No. 82 C 7037 (N.D.Ill. Oct. 5, 1983), an employee's conviction of conspiracy to violate the Hobbs Act had actually been reversed on appeal. Because the grounds for reversal did not implicate the truth of the finding that the employee had committed malfeasance in the course of his public employment, Judge Moran found the employee had received all the process he was due slip op. at 2–3):

Plaintiff was convicted in a bench trial before Judge Bernard Decker of conspiracy to violate the Hobbs Act. In that trial the plaintiff, then defendant, had of course the full rights accorded defendants in a federal criminal proceeding. The government's burden of proof was proof beyond a reasonable doubt. Greene was represented by counsel and had a full opportunity to cross-examine and make his own defense. On appeal, the Court of Appeals reversed solely because the extortion did not sufficiently impact interstate commerce. It stated, however, that the "relevant facts unfolded at trial virtually without dispute or contradiction...." *United States v. Mattson*, 671 F.2d 1020, 1021 (7th Cir. 1982). The statement of facts in that

8. At most the issue reduces not to whether Folak could properly have been terminated, but whether he had a vested right in continuing to receive full pay as a *Deputy Sheriff* after he had stipulated to his wrongdoing in a formal judicial proceeding (one implicating his liberty in the literal sense) and before the formalities of a

hearing with an inevitable outcome could be completed. That issue does not commend itself as posing a due process violation. Indeed precisely the same consideration was present in *Brockert*, which is therefore square precedent against Folak on the issue identified in this footnote.

opinion disclose that Greene was directly involved in extorting money from an electrician in return for using his presumed influence to get the electrician a supervisor's license.

Whether or not Greene had a property entitlement or, more likely, a liberty entitlement because his suspension and discharge were for reasons reflecting upon his honesty and integrity, it cannot be disputed that the conduct established at his criminal trial were reasons, indeed compelling reasons, for his suspension and discharge. That trial, with due process safeguards and an opportunity to be heard well beyond the procedural due process plaintiff now claims, provided ample cause for both the suspension and discharge. We live in a real world. Plaintiff cannot complain when the justification for his suspension and his discharge was conclusively established in the fullest of due process hearings, a criminal trial, and the defendants can hardly be faulted, when taking final action, in relying upon the results of that hearing. *See McElwee v. Todd,* 581 F.2d 1182 (5th Cir.1978), *Simmons v. Drew,* [716 F.2d 1160 (7th Cir.1983)].

Folak cites *Jessen v. Village of Lyndon Station,* 519 F.Supp. 1183 (W.D.Wis.1981) for the proposition a judicial determination cannot substitute for an administrative hearing by the firing entity. There an employee did obtain an injunction and the right to a hearing even though a state court had previously ordered him terminated as Lyndon Station police chief. But Folak chooses to ignore the vital differences: Jessen had not been a party to the state judicial proceedings (in fact he was denied the right to intervene in that case), and he did not concede the grounds on

which the state court relied were adequate to justify his dismissal.[9]

In summary, it cannot be determined at this early stage whether Folak had a property interest in his continued employment. In any event, however, it has been established—on Folak's own terms—he cannot demonstrate he did not receive all the process that was due him.

### Motion for Sanctions

■ Elrod seeks sanctions against Folak and Steinback under Rule 11, the bad faith exception to the American Rule and Section 1927. Essentially he points to the absence of merit in this lawsuit, from which he invites this Court to infer Folak and Steinback are in bad faith.[10] There is authority suggesting an obvious lack of merit, even without a finding of subjective bad faith, may support an attorneys' fees award under the bad faith exception or Section 1927. See *McCandless v. Great Atlantic & Pacific Tea Co.,* 697 F.2d 198, 200–01 & n. 4 (7th Cir.1983). Whatever the test, though, a key to the result is a determination that the legal insufficiency of the Complaint is obvious.

Elrod argues such obviousness by stating (R. Mem. 9):

Plaintiff has absolutely no right to a hearing, and no basis for belief that one would serve any useful purpose, even if he had such a right.

As the initial discussion in this opinion makes plain, Folak's "right to a hearing" vel non is *not* plain at this stage. Thus Elrod's first point has not been established and cannot underpin sanctions. Elrod's second point, that a hearing would have no "useful purpose," deserves closer examination.

9. It may be noted District Judge Crabb, who decided *Jessen,* also authored the District Court opinion adopted and published by our Court of Appeals in *Brockert.* Obviously the two cases are reconcilable in the author's eyes. And the obvious distinction between them is that in *Brockert* (as here) the employee has to concede (or has conceded) the correctness of the grounds relied on by his employer for deprivation of his property interest.

10. Steinback was clearly aware of the course of events in *United States v. Folak,* for he represented Folak's codefendant Hyman Schmidt in that case. Lack of such knowledge would have negated bad faith on Steinback's part. It does not follow, however, that the existence of such knowledge alone proves bad faith. That conclusion would require the added determination that the proceedings in *United States v. Folak* would preclude a bona fide argument for Folak's recovery under Section 1983.

Of course neither Folak nor Steinback could have thought a hearing would be "useful" in terms of its ultimate outcome. That proposition however does not bear a one-to-one correlation to an obvious lack of any legal merit in Folak's claim. On that score the question is a different one: whether Folak or Steinback should have known the futility of a hearing would necessarily lead to the claim's dismissal.

That more refined question has been illuminated by *Brockert, Simmons* and *Greene*—three 1983 cases. No definitive solution had been provided in earlier cases. And it is ironic that Elrod himself—the proponent of the obviousness argument—cited *none* of those three cases until he filed an unsolicited Sur-reply Memorandum, to which he attached a copy of *Greene* (which in turn had cited *Simmons* but not *Brockert*). Steinback on the other hand did cite *Jessen*, albeit in a belated responsive memorandum. At the risk of repetition, the key to untangling the issues of this case is to realize the procedures outlined in the Order may create a property interest, but they do not establish what process is due. That analysis owes nothing to the parties, and the other side of the same coin is that the assertion of Folak's claim (only to be defeated by that analysis) cannot support a bad faith fee award against either Folak or Steinback.

Elrod also claims both the Complaint and Folak's original Complaint contain statements known to Steinback to be false, in violation of Rule 11. Paragraph 11 of the original Complaint may fairly be viewed as disingenuous:

> Plaintiff's employment with the Sheriff's Office of Cook County was not terminated for cause, that is, was terminated without justification.

The current Complaint ¶ 1 is perhaps less troublesome in that respect:

This is an action for injunctive relief and damages on behalf of Plaintiff, formerly a deputy sheriff with the Sheriff's Office of Cook County, Illinois, who was summarily fired without cause in violation of the Constitution and laws of the United States.

Steinback argues the filing of the Complaint before interposition of a responsive pleading means this Court may ignore the original Complaint's allegations. That concept, developed for wholly different purposes,[11] has no bearing whatever on the Rule 11 question whether counsel has played square with the court.

Nonetheless Rule 11 sanctions may be severe and should not be imposed lightly. This Court supposes it is arguable the pleading references to "without cause" or "without justification" *could* have been aimed at the alleged procedural flaws in the firing, rather than at the lack of *substantive* grounds. Certainly Steinback would not have expected to get away with the latter kind of bald misstatement (a factor that bears on whether such a deliberate misstatement was likely made). When the issue was posed by defendants' motion (as was to be expected), Steinback and Folak did not actively or obstinately deny Folak had indeed been fired for good cause in the substantive sense. This Court will not impute the requisite bad motives to Steinback.

### Conclusion

Elrod's motion to dismiss is well founded. Moreover it is plain from the parties' submissions that Folak cannot cure the fatal flaw in his due-process-grounded claim. In the alternative terms available to this Court (see n. 2), there is no genuine issue of material fact and Elrod is entitled to a judgment as a matter of law. This action

---

11. Folak cites *Nisbet v. Van Tuyl,* 224 F.2d 66, 71 (7th Cir.1955) for the proposition that on a summary judgment motion the allegations in a superseded complaint no longer constitute binding admissions. It takes little thought to show the total irrelevance of that holding to the current question (though *Nisbet* itself acknowledges the continued relevance of a superseded pleading containing material admissions). Had Steinback filed a demonstrably false affidavit in support of the original Complaint, could he have argued it was *functus officio* —that he had no responsibility—simply because an Amended Complaint had been filed?

is dismissed with prejudice. Elrod's motion for sanctions is denied.