Dwight O. BROCKERT, Jr.,
Plaintiff-Appellant,

v.

Joel SKORNICKA, Mayor, and the City
of Madison, Wisconsin, a municipal
corporation, Defendants-Appellees.

No. 83–1331.

United States Court of Appeals,
Seventh Circuit.

Argued June 2, 1983.

Decided July 1, 1983.

Rehearing and Rehearing En Banc
Denied Aug. 24, 1983.

Thomas J. Kelly, Spring Green, Wis., for plaintiff-appellant.

Larry W. O'Brien, Asst. City Atty., Madison, Wis., for defendants-appellees.

Before BAUER and COFFEY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.[*]

BAUER, Circuit Judge.

Plaintiff-appellant, Dwight Brockert, brought this action seeking declaratory and injunctive relief on the basis that his constitutional rights were violated when he was dismissed from employment by the City of Madison, Wisconsin. The district court granted summary judgment for the defendants and Brockert appealed; we have jurisdiction under 28 U.S.C. § 1291.

The district judge analyzed each of plaintiff's claims thoughtfully and correctly. Accordingly, we affirm the district court judgment and adopt its opinion, which is reprinted below.

AFFIRMED.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DWIGHT O. BROCKERT, JR.,
 Plaintiff,
 v.
 ORDER
 81–C–489
JOEL SKORNICKA, Mayor, and
THE CITY OF MADISON, WISCONSIN,
a Municipal Corporation,
 Defendants.

This is a civil action for declaratory and injunctive relief based on plaintiff's claims that his employer, the City of Madison, violated his constitutional rights when he was dismissed. Plaintiff has moved for partial summary judgment on the issue of the constitutionality of § 3.27, Madison General Ordinances. Defendants have moved to dismiss the action for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment declaring the same section to be valid as written and as applied to plaintiff. Because matters outside the pleadings have been presented to the court and not excluded by it, and because all parties have had a fair opportunity to present materials to be considered on the motion for summary judgment, defendants' motion to dismiss will be treated as a motion for summary judgment. Rule 12(b), Federal Rules of Civil Procedure. The cross motions for summary judgment are presently before the court.

I find there is no genuine issue with respect to any of the following material facts.

FACTS

Plaintiff was a permanent employee of the defendant City of Madison and worked for the defendant City from 1966 to February 8, 1980; since 1974, he was employed as a Construction Inspector. Plaintiff was a member of City Employees Local No. 236, Laborers International Union of North America, AFL–CIO. In 1975, plaintiff made a request to Mayor Paul Soglin for an exemption from § 3.35(6)(f)[1] (now § 3.35(10)(a)) of the Madison General Ordinances which required him to reside in the City of Madison. The exemption was granted for one year. In 1977, at plaintiff's request, Mayor Soglin renewed the exemption for three years.

On December 3, 1979, plaintiff requested a continuation of permission to reside out-

---

[*] The Honorable Anthony J. Celebrezze, Senior Judge of the United States Circuit Court for the Sixth Circuit, is sitting by designation.

1. Section 3.35(6)(f) read as follows:

Every person appointed to a position in the classified civil service shall at the time of his appointment be a citizen of the United States and shall within sixty days after the completion of his probationary period establish residence within the City of Madison. He shall maintain such residence during the period of his employment unless permission to reside outside the city shall be expressly granted by the Mayor for such appointee. In case any employee of the City of Madison shall cease to maintain his residence within the city, his position or employment shall be deemed automatically vacated.

side the city from the defendant, Mayor Joel Skornicka. Two weeks later, defendant Skornicka advised the plaintiff that he could not extend plaintiff's exemption without "medical information sufficient to show that there exists a compelling reason" for residing outside the city. On December 21, 1979, Dr. Jay P. Keepman wrote to defendant Skornicka stating that, in his opinion, plaintiff's wife "must live in preferably a rural setting" and that he could not allow her to reside in an urban area like Madison.

On January 3, 1980, defendant Skornicka informed the plaintiff that Dr. Keepman's letter contained insufficient information, but that he would consider further information directed to the specific medical difficulties involved and how they were exacerbated by an urban environment. Plaintiff's exemption expired on January 15, 1980, and on January 16, 1980, defendant Skornicka directed plaintiff's supervisor to take the action mandated by § 3.27, Madison General Ordinances, which, in language similar to § 3.35(6)(f), required automatic vacation of an employee's position for residence outside the city.

Plaintiff's supervisor notified plaintiff that he had scheduled a hearing for January 17, 1980, to determine whether plaintiff had failed to meet the residency requirements of § 3.27. After the hearing, defendant Skornicka temporarily extended plaintiff's exemption to provide plaintiff with an opportunity to submit either a proposal or further information in support of his request for an exemption. Subsequently, plaintiff's attorney proposed that plaintiff's wife's doctor discuss her condition with a doctor of defendant Skornicka's choosing, after which the doctor chosen by defendant Skornicka would make an oral report to the Mayor.

**2.** Section 3.27 reads in relevant part:
... No person shall be eligible for election, appointment or employment to any position as an officer, department head, employee or member of a board or commission unless he shall reside in the City of Madison unless permission to reside outside of the City of

On January 30, 1980, defendant Skornicka rejected the proposal and demanded that plaintiff's wife sign a complete medical release. The defendant pledged his confidence and that of his staff and promised to return all medical information after the decision was made. The defendant also temporarily extended plaintiff's exemption to February 8 to allow plaintiff time to respond. On February 6, plaintiff's lawyer made a counter proposal offering to release all of the plaintiff's wife's medical information to a doctor chosen by the City. The doctor would then determine what information was relevant to the residence issue and report that information to defendant Skornicka. In a letter of February 8, defendant Skornicka rejected the counter proposal and confirmed the expiration of plaintiff's exemption as of that day. Plaintiff's position was vacated pursuant to § 3.27, Madison General Ordinances, as of that date.

Plaintiff commenced a state action based on the loss of his exemption on May 4, 1980. It was dismissed by stipulation of the parties on August 12, 1981. Plaintiff commenced this action on July 21, 1981.

### OPINION

Upon a motion for summary judgment, the moving party will succeed if the documents properly before the court show there is no genuine issue as to any material fact and if the party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. The subject of the cross motions for summary judgment is the constitutionality of § 3.27, Madison General Ordinances,[2] on its face and as applied.

Madison shall be expressly granted by the Mayor. In the event that any such City officer, department head, employee or member of a board or commission shall cease to reside in the City of Madison, his office, position or employment shall be automatically forthwith vacated. . . .

## I. Facial Validity of § 3.27

Plaintiff contends that the lack of standards governing the Mayor's decision under § 3.27 whether to waive that section's residency requirements violates his rights to due process and equal protection. The defendants respond that the ordinance contains an implicit standard requiring it to be applied for the "good order of the city" and that, in any event, no standards are required by the United States Constitution.

 ·Before reaching the merits of the question, I must deal with defendant's assertion that plaintiff may not challenge the validity of § 3.27 because he has accepted its benefits.[3] The United States Supreme Court has stated that it "will not pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefits." *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandies, J., concurring), *quoted in Fahey v. Mallonee,* 332 U.S. 245, 255, 67 S.Ct. 1552, 1556, 91 L.Ed. 2030 (1947). However, the "doctrine has unquestionably been applied unevenly in the past, and observed as often as not in the breach." *Arnett v. Kennedy,* 416 U.S. 134, 153, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1974). Furthermore, the doctrine is most appropriate when a party seeks to retain the benefits of a governmental act while attempting to invalidate its burdens. *See Fahey,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (those taking advantage of federally authorized banking privilege cannot challenge limitations imposed for public protection); *United States v. San Francisco,* 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050 (1940) (city cannot retain federal land grant and attempt to invalidate restrictions under which it accepted the land). In this case plaintiff once benefited from the exemption provision, but now has been denied that benefit. He does not seek an unfair advantage from the city by keeping a benefit while attempting to do away with a corresponding burden. Indeed, were defendants' argument accepted, a party in plaintiff's position could never challenge the ordinance: if he attempted to invalidate the waiver provision prior to applying for it, there would be no controversy; having once applied and received the exemption and its benefits, he would be estopped from challenging it. In sum, plaintiff is not precluded from challenging the ordinance because he once benefited from it.

Plaintiff does not challenge the validity of the residency requirement of § 3.27 itself, only the indefinite exemption provision. Residency requirements have been upheld in the ·face of challenges based on the right to interstate travel, *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) (per curiam) and the Fourteenth Amendment, *Detroit Police Officers Assn. v. City of Detroit,* 385 Mich. 519, 190 N.W.2d 97 (1971), *appeal dismissed for want of a substantial federal question,* 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972). *See also Ciechon v. City of Chicago,* 634 F.2d 1055, 1059 (7th Cir.1980). Therefore, only the exemption provision of § 3.27 will be considered.

 Plaintiff cites the venerable case of *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), in support of his contention that an ordinance without standards for enforcement cannot be allowed to stand. In *Yick Wo,* the City of San Francisco prohibited the operation of any laundry in a wooden building without permission from the board of supervisors. The · Court found that the board's power "is not confided to their discretion in the legal sense, but is granted to their mere will. It is purely arbitrary, and acknowledges neither guidance nor restraint." *Id.* at 366–67, 6 S.Ct. 1068–69. The Court stated that such an ordinance, by subjecting one's rights to "the mere will of another, seems

---

**3.** Defendants also contend that plaintiff is barred from maintaining this action by Wis. Stats. § 62.25, which, through Wis.Stats. § 893.80, requires a claim to be filed with the city within 120 days of the event giving rise to the claim. Even if I were to assume, which I do not, that § 62.25 applies to actions under the Civil Rights Act, plaintiff commenced his state court suit within 120 days of his dismissal, thus giving defendants "actual notice" of his claim in satisfaction of §§ 893.80 and 62.25.

to be intolerable in any country where freedom prevails, as being the essence of slavery itself." *Id.* at 370, 6 S.Ct. at 1071. However, the Court decided the case on narrower grounds, finding that the ordinance was administered in a manner that discriminated against Chinese applicants, thus violating the equal protection clause.

Plaintiff has made no allegation in this case that § 3.27 was applied in a discriminatory manner or that it had "a special impact on less than all the persons subject to its jurisdiction." Therefore, he has stated no equal protection claim, *New York Transit Authority v. Beazer,* 440 U.S. 568, 587–88, 99 S.Ct. 1355, 1366–67, 59 L.Ed.2d 587 (1979), and that portion of his complaint will be dismissed.

The admonitions of *Yick Wo* are of continuing relevance, however, in that a standardless ordinance is subject to facial attack under the due process clause through the vagueness doctrine. "To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982), *reh. denied,* 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476. A vague enactment may be judged by at least two problems it presents. *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). First, a vague law does not give a person of ordinary intelligence a reasonable opportunity to comply with the law. In effect, there is no notice of what the law requires. Second, a vague law lacks explicit standards for its application, and thus "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications. *Id.*

The application of these standards varies with the nature of the enactment because fair notice and fair enforcement are more important in some areas than in others. *Hoffman Estates,* 102 S.Ct. at 1193. Thus, the vagueness doctrine is most strictly applied when the law interferes with free expression or the exercise of other constitutionally protected rights. *Id.* at 1193–94; *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974); *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974). A degree of vagueness is more tolerable in civil enactments than it is in laws with criminal penalties; in the former, "the consequences of imprecision are qualitatively less severe." *Hoffman Estates,* 102 S.Ct. at 1193 and *Winters v. New York,* 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840 (1948). *See also Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). Finally, economic regulation is subject to a less stringent vagueness analysis. *Hoffman Estates,* 102 S.Ct. at 1193 and *Smith v. Goguen,* 415 U.S. at 573, n. 10, 94 S.Ct. at 1247, n. 10 (citing *United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963)). Economic regulation usually deals with a narrower subject and those affected by it are more likely to consult the law, seeking clarification if necessary, in order to plan their behavior. *Hoffman Estates,* 102 S.Ct. at 1193.

Plaintiff's challenge to the waiver provision of § 3.27 should be evaluated according to the less stringent standard applicable to economic regulation. Plaintiff has not alleged a violation of his right of free expression. Moreover, § 3.27 is a civil ordinance involving no penal sanctions. Like a businessman, plaintiff would be expected to consult the law governing his employment and seek clarification if necessary. This he did, and defendant Skornicka delineated at least the first steps required of plaintiff to comply with § 3.27 by requiring a complete medical release.

Under the vagueness test applicable to economic regulation, plaintiff's facial challenge to § 3.27 must fail. Although the waiver provision itself provides no notice of how an interested party may comply with it, it may be given content through proper application. *Waters v. Peterson,* 495 F.2d 91, 99 (D.C.Cir.1973). In this case, plaintiff had notice of the first step necessary to comply with the waiver provision when de-

fendant Skornicka required a complete medical release. Although the ultimate question of what medical problem (or other matter) would justify a waiver was left as unclear as before, the due process clause does not demand the impossible of governmental authorities. A waiver provision that attempted to incorporate every situation justifying an exemption would be of enormous proportions, if not impossible to draft. On the other hand, a provision setting forth a few general situations deserving a waiver would deprive the mayor of the flexibility necessary to deal with unforeseen, but meritorious requests. Finally, a waiver provision incorporating a broad standard,[4] such as exemption "for cause," would provide little more in the way of guidance or notice than no standard at all.[5] It would be difficult to attribute constitutional significance to such an unhelpful "standard." In sum, it would not be reasonable to require the city to be more explicit in drafting its waiver provision. Under the lesser standard of review applicable to laws of this nature, the city's initial interpretation of the waiver provision and the difficulties involved in being more precise justify the lack of notice inherent in the provision.

 Under the same standard of review, the danger of arbitrary enforcement is not great enough to warrant invalidation of the ordinance. Again, this is not a criminal statute, so there is no danger of arbitrary penal sanctions. Nor is there a danger of government imposed stigma that might merit a higher degree of scrutiny. See Hoffman Estates, 102 S.Ct. at 1194. Although the waiver provision presents significant possibilities for arbitrary application, I cannot strike down the ordinance based on possibilities. As noted above, plaintiff has not alleged that the ordinance

was applied in a discriminatory manner. "[I]t will be time enough to consider any such problems when they arise." Seagram & Sons v. Hostetter, 384 U.S. 35, 52, 86 S.Ct. 1254, 1265, 16 L.Ed.2d 336 (1966). In addition, the application of this ordinance does not result in the delegation of basic policy matters to "policemen, judges, and juries" as the Court warned against in Grayned, 408 U.S. at 109, 92 S.Ct. at 2299. Here, as head of the city's executive department, it is the mayor who is entrusted with making the policy decisions involved in granting or denying waivers. Thus, the discretion is placed where it has been customarily and appropriately exercised.

Plaintiff's motion for summary judgment declaring the ordinance to be invalid on its face will be denied, and defendants' counter motion will be granted.

## II. Validity of § 3.27 as Applied

 The cross motions for summary judgment on the validity of the ordinance as applied raise issues of substantive and procedural due process. Plaintiff challenges the substantive fairness and validity of defendant Skornicka's decision to deny his request for an exemption and plaintiff challenges the procedures used in his dismissal. Plaintiff's right to due process, substantive or procedural, depends on the existence of a relevant property or liberty interest. Webster v. Redmond, 599 F.2d 793, 796–97 (7th Cir.1979), cert. denied, 444 U.S. 1039, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980); Paige v. Harris, 584 F.2d 178, 184 (7th Cir.1978) and Jeffries v. Turkey Run Consolidated School District, 492 F.2d 1, 4–5 (7th Cir.1974). In the absence of a property interest in his exemption from the residency requirement, the court cannot review plaintiff's claim that defendant Skornicka's ap-

---

4. Broad standards have been approved in other contexts. See Engel v. O'Malley, 219 U.S. 128, 137, 31 S.Ct. 190, 192, 55 L.Ed. 128 (1911) (refusal to license "for cause" is not arbitrary) and New York ex rel. Lieberman v. Van de Carr, 199 U.S. 552, 558–63, 26 S.Ct. 144, 145–47, 50 L.Ed. 305 (1905) (state court interpretation requiring permit applications to be judged "in the honest exercise of reasonable discretion" was a sufficient standard).

5. Indeed, defendants have argued that § 3.27 already incorporates a similarly broad standard. They maintain that section 62.11(5) of the Wisconsin Statutes, which sets out the powers of a city council, provides a standard for § 3.27 by giving councils the "power to act for the government and good order of the city."

plication of § 3.27 was arbitrary and capricious. *Jeffries,* 492 F.2d at 4, n. 8. In the absence of a property interest in his job with the city, the court cannot review plaintiff's claim that his dismissal was procedurally deficient.

### A. Substantive Due Process

 Plaintiff contends that defendant Skornicka acted unfairly in requiring a complete medical release and in denying plaintiff an exemption from the residency requirement for his failure to provide such a release. Thus, plaintiff challenges the substantive validity of defendant Skornicka's decision. Before this court can consider such a challenge, plaintiff must show that he had an interest in the decision that would trigger due process protections. An employee does not have a substantive right to be free from an arbitrary and capricious dismissal independent of due process interests. *Paige v. Harris,* 584 F.2d at 184.

 In evaluating plaintiff's contention, the existence of a due process interest in his job is not relevant: the decision plaintiff challenges is the one in which he was denied an exemption from the residency requirement. Therefore, plaintiff must have a protected interest in that decision before this court may consider its substantive fairness. Clearly plaintiff had no such interest. The exemptions plaintiff was given were granted for specific time periods, and any property interest plaintiff had in the exemptions expired with the last one in February of 1980. Moreover, no rule gave plaintiff the right to an exemption or to a renewal absent sufficient cause. Thus, the exemptions were much like Professor

Roth's employment contract in *Board of Regents v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972): there was a specific termination date and no provision for automatic renewal or renewal absent "sufficient cause." Thus, there was no property interest after the expiration of the contract.

Because plaintiff lacked a protected interest in the exemption, this court cannot consider the fairness of defendant Skornicka's denial of an exemption.

### B. Procedural Due Process

 Plaintiff also contends that his dismissal was procedurally defective. Again, plaintiff must show he had a protected interest that would trigger due process protections. Because plaintiff is challenging the manner in which he was dismissed, the relevant interest in this analysis is any property interest plaintiff had in his job. Such a property interest exists if plaintiff has a legitimate claim of entitlement to his job, which usually stems from the rules, laws or policies of the employing entity. *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

Plaintiff's status as a "permanent" employee of the defendant City is undisputed. *See* Personnel Rule 7.02.[6] Madison's civil service system covers all City employees. Section 3.35(1).[7] Under § 3.35(16)(a) of the Madison General Ordinances,

> All persons holding positions in the civil service shall be subject to ... removal from office or employment ... for misconduct, incompetency, inefficiency, or failure to perform duties, or to observe the rules and regulations of the depart-

---

**6.** Personnel Rule 7.02 provides, in part:

> A permanent appointment results from the selection of a candidate from a certification of eligibles to fill a position that is of indefinite duration and is provided for by the budget. Permanent tenure in the position is acquired only after passing a probationary period of at least six (6) months and such other requirements as may be established by the Personnel Director.

*See also* Article IX of the Agreement between the City of Madison and City Employees Local No. 236, Laborers International Union of North America, AFL–CIO (union agreement), in effect

from January 1, 1980 to December 31, 1981, which provides, in part:

> All newly hired employees shall be on probation for the first six (6) months of employment or any extension thereof.... Any employee who is retained in a position covered by this Agreement beyond six (6) months shall be considered to have successfully completed his probationary period ... at which time he shall be certified as "permanent" or "terminated."

**7.** Section 3.35(1) also exempts many officers and employees from the civil service system, but none of the exemptions are relevant here.

ment, office or board. In all such cases, the affected employee may appeal the action taken in the manner prescribed in Subdivision (b) hereof.[8]

Defendants contend that plaintiff had no property interest in his employment because § 3.35(16) applies only to disciplinary actions (and is thus irrelevant to a dismissal for nonresidency),[9] and because the great discretion vested in the Mayor in evaluating the requests for exemptions precludes the possibility of a property interest.

Although § 3.35(16)(a) is entitled "Disciplinary Authority," the first sentence of that section clearly shows that it applies beyond the disciplinary context:

> Any appointing authority or department head in whom is vested *disciplinary or removal power,* shall be allowed full freedom in his or her action on such matters, it being the intent and spirit of this ordinance to provide a fair and just approach to municipal employment for every inhabitant of the City in order that City employees may be selected on a basis of merit, but in no sense, to handicap or curtail responsible administrative officers in securing efficient service.

(Emphasis added). In addition, § 3.35(16)(a) provides for removal for incompetency and inefficiency, both of which are unrelated to discipline.

Defendants' second argument is that the mayor's unlimited discretion in considering exemptions, and the automatic dismissal resulting from nonresidency, convert plaintiff's position to one akin to an "at-will" job. Section 3.35(10)(a) of the Madison General Ordinances explicitly applies the § 3.27 residency requirement to civil service employees: "Every person appointed to any position in the classified civil service shall ... establish residence within the City of Madison [or] his position or employment shall be deemed automatically vacated."

In *Board of Regents v. Roth,* the Court stated that property interests "are created *and their dimensions are defined* by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709 (emphasis added). Thus, assuming the Madison civil service system creates a property interest for civil service employees, it could be argued that the system defines that interest as not including due process when a termination is based upon nonresidency under § 3.35(10)(a). However, the Court in *Board of Regents v. Roth* ultimately noted that Roth's property interest was "defined by the terms of his appointment [which] secured his interest in employment up to June 30, 1969." *Board of Regents v. Roth,* 408 U.S. at 578, 92 S.Ct. at 2709. Thus, an interest may be limited (or "defined") by the state temporally; however, the due process protections triggered by that interest may not be curtailed. A contrary indication in the plurality opinion in *Arnett v. Kennedy,* 416 U.S. at 153–55, 94 S.Ct. at 1644–45, was rejected by a majority of the Court. *Id.* at 166–67, 94 S.Ct. at 1650–51 (Powell, J., concurring in part and concurring in the result in part), 177–78, 94 S.Ct. at 1655–56 (White, J., concurring in part and dissenting in part), and 210–11, 94 S.Ct. at 1671–72 (Marshall, J., dissenting). As stated by Justice Powell, "While the legislature may elect not to confer a property interest in [government] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Id.* at 167, 94 S.Ct. at 1651. In this case, if plaintiff has a right to continued employment absent a rule violation, the procedural protections accompanying that right may not be withdrawn for the residency rule.

---

**8.** Personnel Rule 17.01 also gives all permanent employees the rights specified in § 3.35(16). *See also* Article VI(3) of the union agreement:

> Management Rights include but are not limited to, the [right to] suspend, demote, discharge or take other appropriate action against the employees for just cause.

**9.** Defendants make the same claim with respect to Article VI(3) of the union agreement (set forth in note 8, *supra* ). However, that article does not limit itself to disciplinary situations.

Plaintiff contends that § 3.35(16) gives him such a right; that is, a right to be dismissed "only for good cause." [10] However, § 3.35(16), by its terms, does not confer that right. Section 3.35(16) states that an employee shall be subject to dismissal for various reasons, but it does not state that the employee may be dismissed *only* for those reasons. Thus, § 3.35(16) is similar to the ordinance considered in *Bishop v. Wood*, 426 U.S. 341, 344 n. 5, 96 S.Ct. 2074, 2077 n. 5, 48 L.Ed.2d 684 (1976), which provided for the discharge of a permanent employee for unsatisfactory work, negligence, inefficiency, or unfitness. The Court noted that such language in an ordinance could fairly be read as conferring a property interest, or as merely setting forth procedures for removal of an employee; the proper interpretation was found to be a matter of state law. *Id.* at 345, 96 S.Ct. at 2078.

The courts of Wisconsin have not reported a decision authoritatively interpreting § 3.35(16). However, in *Taplick v. City of Madison Personnel Board*, 97 Wis.2d 162, 293 N.W.2d 173 (1980), the Wisconsin Supreme Court considered an analogous city ordinance. The ordinance set forth nine grounds upon which the personnel director could refuse to certify a job applicant as eligible for a position. Taplick contended that those nine reasons were exclusive. However, the court found that the ordinance merely set up administrative guidelines for screening applicants, and that it did not create a right in those not disqualified by the nine reasons to be certified for a job. *Id.* at 172–73, 293 N.W.2d 173. In sum, the court found that the ordinance did not limit the personnel director's discretion in rejecting applicants.

It could be argued that *Taplick's* reasoning would not be extended from job applicants to job holders; that is, one's interest in the job he or she holds is arguably greater than an applicant's interest in a position. Some support for this argument can be found in another Wisconsin Supreme Court opinion. In *State ex rel. DeLuca v. Common Council of City of Franklin*, 72 Wis.2d 672, 677–78, 242 N.W.2d 689 (1976), the court found that the Wisconsin statute governing dismissal of city clerks allowed removal only for cause. Although the court did not explicitly set forth the language giving rise to that property interest, dismissal of city officers is governed by Wis. Stats. § 17.12. The relevant provisions of that statute show that city officers may be removed for cause; the statute does not state that removal may be *only* for cause.[11] The court seems to have found that a list of

---

**10.** Possibly plaintiff could claim another sort of property interest in his job: that the reasons for dismissal set forth in § 3.35(16)(a), along with the procedures of § 3.35(16)(b) for appeal of dismissal, create an objective, mutually understood expectation that an employee will not be dismissed for a rule violation unless he or she has violated that rule. This would not be a claim to continued employment absent a violation of the rules; it would simply recognize a right not to be dismissed by mistake or pretext.

The basis of this right would derive from the existence of the rules themselves and the procedures designed to ensure they are fairly applied. The existence of a rule implies that one can be dismissed for violating it only if there has actually been a violation (thus limiting the employer's discretion), and although the procedures designed to ensure such a result do not, in themselves, create a protected interest, *Shango v. Jurich*, 681 F.2d 1091, 1100–03 (7th Cir.1982), they may indicate the existence of a substantive right. *Id.* at 1101, *citing Suckle v. Madison General Hospital*, 499 F.2d 1364, 1366

(7th Cir.1974) and *Lombardo v. Meachum*, 548 F.2d 13, 16 (1st Cir.1977).

However, I need not consider whether plaintiff had such a property interest in this case. There was no danger of plaintiff being dismissed for violation of the rule if he was not, in fact, violating it: plaintiff has admitted that he was a nonresident.

**11.** Section 17.12(1), Wis.Stats., provides in relevant part:

Officers of cities ... may be removed as follows:

(a) *Elective.* Elective officers by recall ... or by the common council, for cause.

(c) *Appointive.* Appointive officers, by whomsoever appointed, by the common council, for cause.

The property interest found by the court may have been derived from Wis.Stats. § 17.16, which sets forth the procedure for removals. Section 17.16(3) allows removal for cause "only upon written verified charges," which implies a limit on the reasons for dismissal. *See also State ex rel. Gill v. Common Council of City of*

causes for dismissal was exclusive in the absence of any exclusive language.

The only conclusion to be drawn from the current state law on the question is that there is no definitive answer. Therefore, a determination of the correct meaning of civil service protection in Madison would require a factual inquiry. Such an inquiry would focus on past practices under the civil service system and the intent of the parties. However, that inquiry is not necessary in this case because, even assuming plaintiff had a property interest in his job, he received all the process that was due.

Assuming that plaintiff had a property interest in his job, the court would have to determine what process plaintiff deserved to protect that right. It is a familiar maxim that due process is flexible and that its requirements vary with the situation. *See, e.g., Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The proper approach in deciding what process is due when a civil service employee is dismissed due to a residency requirement was set forth in *Ciechon v. City of Chicago,* 634 F.2d at 1058–60.

In *Ciechon,* the court considered the three factors listed in *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976), as relevant to what process is due: 1) the private interest affected by the government action; 2) the efficacy of the protections offered, and the probable value, if any, of additional or alternative procedures; and 3) the governmental interest. *Ciechon,* 634 F.2d at 1058. The court found that the sole private interest involved was the employee's uninterrupted receipt of his paycheck which, although important, was not critical because of the possibility of back pay and restoration of other privileg-

es; that the determination required—that is, whether the employee resides within the city limits—is relatively simple and straightforward; and that the city's interest in enforcing its residency requirement was lawful and important. *Id.* at 1058–59. Considering these factors, the court determined that an informal pre-suspension investigation satisfied the employees' due process guarantees, but that a prompt post-suspension hearing was also necessary. *Id.* at 1059–60, *citing Barry v. Barchi,* 443 U.S. 55, 63, 99 S.Ct. 2642, 2648, 61 L.Ed.2d 365 (1979).

In the abstract, the same reasoning and conclusion would apply in this case. However, under the facts of this case, a hearing either before or after plaintiff's dismissal would have served no useful purpose. The only reason to hold such a hearing would be to determine whether plaintiff had violated § 3.27 by living outside the city; however, that determination was unnecessary because there was no dispute over plaintiff's place of residence. In *Ciechon,* and in the usual residency case, there is some dispute over where the employee actually resides. Often this dispute takes the form of a challenge to the legitimacy of the plaintiff's claimed city residence. In this case, however, the dispute was over the demands made upon plaintiff by defendant Skornicka as preconditions to any grant of an exemption. As explained above, plaintiff had no protected interest in the exemption.

It could be argued that the hearing could have served other purposes, such as a forum for plaintiff to ask for a grace period during which he would move into the city. Again, plaintiff had no protected interest in an exemption and nothing required defendant Skornicka to grant, or even consider, a grace period.[12] If plaintiff had a property

---

*Watertown,* 9 Wis. 254 (1859) (power to remove "for cause" operates as a limit on removal power) and *State, on Complaint of Kennedy v. McGarry,* 21 Wis. 496 (1867) (power to remove "for cause" means cause affecting fitness for office).

12. In a supplemental brief, plaintiff contends that defendants should be estopped from dismissing him without giving him an opportunity to move back into the city. Plaintiff bases this

estoppel theory on the city's alleged practice of granting a grace period in such cases (to allow the employee to move into the city), and his reliance on past exemptions. First, plaintiff had no reason to rely on past exemptions; he knew they were granted for a limited period of time and at the mayor's discretion. Second, plaintiff has left uncontroverted defendant Skornicka's sworn statement denying any "policy, practice or procedure" of the City or the

interest in his job, it would have entitled him not to be dismissed absent a fair determination of his place of residence. Once it was fairly determined that plaintiff was in violation of the residency rule, he was in the same position as an "at-will" employee: his employer could dismiss him at that point or, in the employer's unfettered discretion, exercise any clemency with respect to the dismissal.

Because plaintiff had no cognizable interest in an exemption, and because he received all the protections that any civil service property interest entailed, his motion for summary judgment on the invalidity of the ordinance as applied must be denied and defendants' cross motion for summary judgment must be granted.

### ORDER

IT IS ORDERED that

1) plaintiff's motion for summary judgment is DENIED; and

2) defendants' motion for summary judgment is GRANTED.

Entered this 30th day of November, 1982.

BY THE COURT:

/s/ Barbara B. Crabb
District Judge

Office of the Mayor, that allows a grace period for employees losing an exemption.