*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0387p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ASSOCIATION OF CLEVELAND FIRE FIGHTERS;
LOCAL 93 OF THE INTERNATIONAL ASSOCIATION OF
FIRE FIGHTERS; LOCAL 93 OF THE IAFF INDIVIDUAL
MEMBERS, et al.,

                *Plaintiffs-Appellants,*

      *v.*

CITY OF CLEVELAND, OHIO; CIVIL SERVICE
COMMISSION CITY OF CLEVELAND, et al.,

                *Defendants-Appellees.*

No. 06-3823

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-02007—Ann Aldrich, District Judge.

Submitted: April 27, 2007

Decided and Filed: September 25, 2007

Before: KENNEDY, MOORE, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Joseph W. Diemert, Jr., JOSEPH W. DIEMERT, JR. & ASSOC., Cleveland, Ohio, for Appellants. Amy E. Marquit Renwald, CITY OF CLEVELAND LAW DEPARTMENT, Cleveland, Ohio, for Appellees.

McKEAGUE, J., delivered the opinion of the court, in which KENNEDY, J., joined. MOORE, J. (pp. 8-10), delivered a separate opinion concurring in part and dissenting in part.

---

## OPINION

---

McKEAGUE, Circuit Judge. Association of Cleveland Fire Fighters, Local 93 of the International Association of Fire Fighters and all individual members of Local 93, and individual fire fighters Samuel DeVito, Don Posante, and James Sliter (collectively, "Appellants") appeal from the district court's order dismissing their challenges to the residency requirement of the City of Cleveland (the "City"). Appellants allege that the residency requirement set forth in section 74(a) of the City Charter violates the Equal Protection Clause, the constitutional right to travel, and the

1

## I. BACKGROUND[1]

Section 74(a) of the Charter of the City of Cleveland provides that

[e]xcept as in this Charter otherwise provided or except as otherwise provided by a majority vote of the Council of the City of Cleveland, every temporary or regular officer or employee of the City of Cleveland, including members of all City boards and commissions established by the Charter or the ordinances of Cleveland, whether in the classified or unclassified service of the City of Cleveland, appointed after the effective date of this amendment, shall, at the time of his appointment, or within six months thereafter, be or become a bona fide resident of the City of Cleveland, and shall remain as such during his term of office or while employed by the City of Cleveland.

Cleveland, Ohio, Charter ch. 11, § 74(a). Appellants claim that the City Council of Cleveland (the "City Council") has "arbitrarily" granted exemptions from § 74(a) to "numerous City employees," J.A. at 11, but has denied exemptions to them.

Appellant Samuel DeVito requested an exemption from § 74(a) from the City of Cleveland Civil Service Commission (the "Commission") in April 1995 because one of his family members was experiencing health problems. He was told that no exemptions were given. He again requested an exemption on July 24, 2004, this time because other members of his family were experiencing health problems. The Commission apparently advised him to contact the City Council. The City Council, in turn, advised him to contact his councilman. On August 19, 2004, he sent a request to his councilman, who responded that the City Council "would not consider waiving the residency requirement without the full backing of the City Administration." J.A. at 12.

Appellant Don Posante's wife requested an exemption from the Commission on October 16, 2003, asserting that she and her husband wanted to live with his wife's mother, who experienced health problems. The Commission advised Posante's wife to contact their councilman. The councilman, in turn, advised Posante to send a letter to then-Director of Public Safety James Draper and the fire department chief. Posante received a letter from Draper on December 1, 2003, advising him that only the City Council could grant exemptions and that it could only do so by legislation. Posante then sent a letter to his councilman, asking the latter to introduce legislation granting him an exemption. A few weeks later, Posante received a letter from the councilman indicating that he would not support Posante's waiver request.

Appellant James Sliter asked then-City Council President Jay Westbrook how he could be exempted from the residency requirement. Sliter informed Westbrook that his family members feared going outside their house due to the fact that Sliter had been shot by gang members. His family feared gang activity outside the house. Westbrook informed Sliter that he could not be exempted. Later, Public Safety Director William Denihan called Sliter and told Sliter that no one subject to the residency requirement can live outside the city. When he later asked the Commission if he could apply for an exemption, the Commission indicated to him that he should not bother applying.

---

[1] Because the district court dismissed this case for failure to state a claim, the allegations of the Complaint provide the only background facts available to us.

Appellants filed a complaint in the United States District Court for the Northern District of Ohio on October 4, 2004. In it, they complained that § 74(a) violated the Equal Protection Clause, the constitutional right to travel, and the right to travel set forth in the International Covenant on Civil and Political Rights,[2] and that it was also void for vagueness. The City of Cleveland and the Commission (collectively, "Appellees") moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. On March 22, 2006, the district court granted the motion. Appellants filed a timely appeal.

## II. ANALYSIS

### A. Standard of Review

Whether a district court properly dismissed a suit pursuant to Rule 12(b)(6) is a question of law subject to de novo review. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007) (citation omitted). The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007). The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 127 S. Ct. at 1969.

### B. The Right to Travel

The district court properly dismissed this claim. In *McCarthy v. Philadelphia Civil Serv. Comm'n*, 424 U.S. 645, 647 (1976) (per curiam), the plaintiff employee of the Philadelphia Fire Department claimed that his constitutional right to travel was violated. His employment was terminated because he moved from Philadelphia to New Jersey in violation of a municipal residency requirement. *Id.* The Court affirmed the Pennsylvania state courts' sustaining the requirement. *Id.* The Court explicitly stated that the plaintiff "claims a constitutional right to be employed by the city of Philadelphia *while* he is living elsewhere. There is no support in our cases for such a claim." *Id.* at 646-47. Other circuits have accordingly declined right to travel challenges to municipal residency requirements. *See Andre v. Bd. of Trustees*, 561 F.2d 48, 52 (7th Cir. 1977); *Wright v. City of Jackson*, 506 F.2d 900, 902 (5th Cir. 1975). Thus, Appellants' assignment of error with respect to this issue must fail.

### C. Equal Protection

Appellants' complaint states a facial equal protection challenge to the residency requirement. With respect to an as-applied challenge, the complaint is not entirely clear, yet it can be read to raise such a claim. Taking into account the stage of the proceedings, we assume, without deciding, that Appellants raise both as-applied and facial equal protection challenges to the residency requirement.

---

[2] As noted by the district court, Appellants have abandoned this argument.

The residency requirement neither makes classifications along suspect lines nor burdens Appellants' right to travel. Furthermore, even Appellants do not purport that Appellees have, in applying the requirement, done so in such a manner so as to discriminate on the basis of suspect classes or to burden Appellants' fundamental rights. Nevertheless, the Supreme Court has recognized successful equal protection claims brought by "class[es] of one." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).[3] In these "class of one" cases, the plaintiff must "allege[] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* (citations omitted).

## 1. Facial Challenge

The Supreme Court has held that municipal residency requirements such as that at issue in the instant case do not, on their face, constitute an equal protection violation. In *Detroit Police Officers Ass'n v. City of Detroit*, 190 N.W.2d 97, 97-98 (Mich. 1971), the Michigan Supreme Court held that a Detroit residency requirement requiring police officers to reside in the city did not violate the Equal Protection Clause because "[a] policeman's very presence, whether actually performing a specified duty during assigned hours, or engaged in any other activity during off-duty hours, provides a trained person immediately available for enforcement purposes."

The United States Supreme Court dismissed the appeal of that case for want of a substantial federal question. *Detroit Police Officers Ass'n v. City of Detroit*, 405 U.S. 950 (1972). That dismissal constituted a decision on the merits, *see Hicks v. Miranda*, 422 U.S. 332, 344 (1975), as we explicitly recognized in *Wardwell v. Bd. of Educ.*, 529 F.2d 625, 627-28 (6th Cir. 1976). *See also McCarthy*, 424 U.S. at 646 ("We dismissed the appeal [in *Detroit Police Officers*] because no substantial federal question was presented. We have therefore held that this kind of ordinance is not irrational." (citation omitted)). To the extent that no relevant characteristics distinguish the residency requirement in the instant case from that at issue in either *Detroit Police Officers* or *McCarthy*, we conclude that the district court properly dismissed Appellants' facial equal protection challenge for failure to state a claim upon which relief can be granted.

## 2. As-Applied Challenge

We also conclude that Appellants have not pleaded a class-of-one as-applied Fourteenth Amendment equal protection challenge. As the district court found below, Appellants allege a violation, and request relief, as a class. Their complaint states, in an indicative paragraph, "The imposition and enforcement by the **City** and **Commission** upon the **Fire Fighters** conflicts with the Fourteenth Amendment."[4] Compl. at ¶ 21 (emphasis in original to denote defined terms). Reviewing the entirety of their complaint and their additional briefing papers in the court below, it is impossible to conclude that Appellants have ever proceeded as anything other than a class. They do not plead claims for individual relief; rather, they request relief as a class, seeking a finding that the provision is unconstitutional. Furthermore, if other fire fighters were treated differently, then Appellants could have mentioned that in their complaint; to conclude that they allege that members of their class were treated differently from one another without their mentioning any such discriminatory treatment is both unreasonable and contrary to *Twombly*, which requires that the factual allegations of a complaint "be enough to raise a right to relief above the speculative level."

---

[3] The fact that the class here actually contains more than one member "is immaterial for equal protection analysis." *See Olech*, 528 U.S. at 564 n.*.

[4] **City** and **Commission** have their expected definitions. The defined term **Fire Fighters** includes the Association of Cleveland Fire Fighters and all individual members of Local 93, IAFF. Compl. at ¶ 1.

127 S. Ct. at 1965.  Consequently, because it is rational for the City to treat fire fighters differently from other City employees, as stated above, we affirm the district court with respect to this issue as well.[5]

## D.  Void for Vagueness

Finally, Appellants claim that the residency requirement is unconstitutionally vague.  It should be noted that they are challenging the exemption provision, arguing that it provides no standards by which the City Council is to consider an exemption request.  Therefore, Appellants argue, they are not on notice as to the circumstances that will lead to the City Council's granting of an exemption.

We have recognized that the vagueness doctrine has two primary goals:  (1) to ensure fair notice to the citizenry and (2) to provide standards for enforcement by police, judges, and juries.  *Columbia Natural Res. v. Tatum*, 58 F.3d 1101, 1104 (6th Cir. 1995).  With respect to the first goal, the Supreme Court has stated that "[a] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1925) (cited in *Tatum*, 58 F.3d at 1105).  With respect to the second goal, the Supreme Court stated that "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.  A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

The Court has also held that "the degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).  A more stringent test applies if the provision interferes with constitutional rights, and a less stringent test applies if the provision concerns civil rather than criminal penalties. *Id.* at 499.  Accordingly, we note at the outset that a less stringent review applies in the instant case, as the Supreme Court has held that there is no constitutional right to be employed by a city while living elsewhere, *McCarthy*, 424 U.S. at 646-47. *See Flipside*, 455 U.S. at 499.

We begin our analysis by briefly explaining our understanding of the residency requirement's operation.  The requirement sets forth a very clear rule, namely that City employees must live in Cleveland.  The exemption provision is a limited exception to this clear rule, one that is granted at the City Council's discretion.  This exception is not only acceptable, but it should be encouraged.  Indeed, in many cases, especially when they deal with the numerous and varied needs of employees, municipal governments should not be barred from making individualized determinations based on unique circumstances.  Such discretion is often afforded, for example, to requests for variances of zoning boards of appeal, which are often city councils. *See, e.g.*, *Outdoor Commc'ns v. City of Murfreesboro*, No. 94-5406, 1995 WL 390303, at *1, *4 (6th Cir. June 30, 1995) (upholding a city ordinance limiting the display of commercial and noncommercial messages

---

[5] The dissent takes issue with our conclusion that Appellants are proceeding as a class.  We pause to highlight a couple of the dissent's errors.  First, it attempts to support its position by maintaining that Appellants argued that "the denial of exemptions to DeVito, Posante, and Sliter [] have been arbitrary and irrational" and that the complaint included "particular factual allegations regarding DeVito, Posante, and Sliter."  Dis. Op. at 9.  Employing such careful wording, the dissent attempts to avoid the fact that DeVito, Posante, and Sliter have never even formally asked the City Council for a waiver; rather, they have only made ad hoc requests and general inquiries.  Glossing over that fact allows the dissent to proceed without first explaining how the three fire fighters have made individual claims for relief from this "denial."  Second, the dissent fails to mention that the district court treated the claims as brought by a *class* and that Appellants neither filed a motion for reconsideration at the district court level nor developed an argument before this Court that the district court erred on that ground.

on outdoor signs in a void for vagueness challenge in which the plaintiff alleged that the ordinance, which allowed for variances, lacked sufficient criteria to guide the city council and board of zoning appeals).

Having discussed why we are ruling as we do today, we now turn to the case law and find that the district court's dismissal of Appellants' void for vagueness claim also finds support there. Indeed, the instant case is analogous to *Brockert v. Skornicka*, 711 F.2d 1376, 1382 (7th Cir. 1983), a case in which a void for vagueness claim failed. In *Brockert*, the plaintiff was an employee of the City of Madison, Wisconsin, and a city ordinance required him to reside within the city "unless permission to reside outside the city shall be expressly granted by the Mayor." *Id.* at 1378 n.1. The Seventh Circuit reasoned that the plaintiff had notice of the first step necessary to comply with the waiver provision because the mayor required a complete medical release. *Id.* at 1381-82. The court then stated with respect to notice that

> [a]lthough the ultimate question of what medical problem (or other matter) would justify a waiver was left as unclear as before, the due process clause does not demand the impossible of governmental authorities. A waiver provision that attempted to incorporate every situation justifying an exemption would be of enormous proportions, if not impossible to draft. On the other hand, a provision setting forth a few general situations deserving a waiver would deprive the mayor of the flexibility necessary to deal with unforeseen, but meritorious requests. Finally, a waiver provision incorporating a broad standard, such as an exemption "for cause," would provide little more in the way of guidance or notice than no standard at all. . . . Under the lesser standard of review applicable to laws of this nature, the city's initial interpretation of the waiver provisions and the difficulties involved in being more precise justify the lack of notice inherent in the provision.

*Id.* at 1382.

With respect to the danger of arbitrary enforcement, the *Brockert* court held that the danger "is not great enough to warrant invalidation of the ordinance." 711 F.2d at 1382. The court noted that because the ordinance was not a criminal statute, there was no danger of arbitrary penal sanctions or government imposed stigma. *Id.* Additionally, the court recognized that the ordinance did not delegate basic policy matters to police, judges, and juries, as the *Grayned* Court warned against; rather, it entrusted the city mayor with the decision, and thereby "placed [the discretion] where it has been customarily and appropriately exercised," namely at the "head of the city's executive department." *Id.*

The instant provision is similar to the ordinance in *Brockert* with respect to the notice issue: although it is true in the instant case that an employee could theoretically perform or fail to perform some act which disqualifies him from consideration for an exemption without knowing, in *Brockert* the court similarly admitted that the ultimate question of what would justify a waiver was unclear. *Brockert*, 711 F.3d at 1382. However, as stated above, the Seventh Circuit concluded that the pragmatic problems associated with "being more precise" would "justify the lack of notice inherent in the provision." *Id.* Although we, of course, recognize that *Brockert*, a case from one of our sister circuits, is not binding authority, we find that its analysis is sound, and we hold that such reasoning applies to the instant case.

With respect to the arbitrary enforcement issue, the instant provision is again similar to the ordinance in *Brockert*. To the extent that neither provision is a criminal statute, there is no danger of arbitrary penal sanction or government imposed stigma. Neither does the provision in the instant case "delegate[] basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and

subjective basis," as the Supreme Court cautioned against in *Grayned*, 408 U.S. at 108-09, and we cautioned against in *Tatum*, 58 F.3d at 1104. Indeed, Cleveland's provision vests authority regarding exemptions in the City Council, the City's policymaking body. Accordingly, to the extent that the delegation cautioned against in *Grayned* is absent here, it is unclear how the void for vagueness doctrine is even applicable. *See Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1184 (9th Cir. 1988) ("The void for vagueness doctrine does not apply to this fundamental delegation of authority to the legislative body."). Indeed, in *Brockert*, the Seventh Circuit reasoned that the requisite delegation was not present because that ordinance vested waiver authority "where it has been customarily and appropriately exercised," namely in the city mayor, the "head of the city's executive department." *Brockert*, 711 F.2d at 1382.

Similar logic applies to the instant case, although with more force: to the extent that the City's requirement vests exemption authority in the City Council, discriminatory enforcement is no more invited here than it is in any other provision allowing the City Council to pass legislation. Accordingly, and again keeping in mind the less stringent standard of review under which we are operating, we conclude that the firefighters can prove no set of facts in support of their void for vagueness claim that would entitle them to relief. Thus, we conclude that the district court did not err in dismissing Appellants' claim pursuant to Rule 12(b)(6). *See Johnson v. City of Detroit*, 446 F.3d 614, 618 (6th Cir. 2006).[6]

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.

---

[6] The dissent characterizes our reliance on *Brockert* as "unquestioning," Dis. Op. at 10, seemingly implying that such reliance is misplaced because *Brockert* is "a nonbinding decision of another circuit," *id*. We find this anomalous given the degree of similarity between the instant case and *Brockert*, a conclusion with respect to which even the dissent does not take issue. Also, we restate that while analogous decisions from our sister circuits are not binding, we have repeatedly recognized their persuasive authority. *See, e.g.*, *In re Rodriguez*, 2007 WL 1827284, at *4.

The dissent also claims that it would be "eminently feasible" for the City to provide general standards for granting exemptions from the residency requirement, and it provides a litany of ways in which the City could have done so. Dis. Op. at 10. However, the dissent fails to discuss how any of its suggestions satisfy the practical concerns of the court in *Brockert*. This omission is critical in light of our less stringent review, *see Flipside*, 455 U.S. at 499, another consideration that the dissent chooses to ignore.

Finally, we note that although the dissent would reverse with respect to the vagueness issue, it cites no authority–from this Court or from its sister circuits–upon which it bases such a conclusion. Instead, it merely states, in conclusory fashion, that this case falls within the broad constructs of the Supreme Court's decisions in *Grayned v. City of Rockford*, 408 U.S. 104 (1972), and *A.B. Small Co. v. Am. Sugar Ref. Co.*, 267 U.S. 233 (1925). Although it also cites to *Londoner v. City and County of Denver*, 210 U.S. 373, 385-86 (1908), for the proposition that "due process demands heightened protections when a governmental body acts in a quasi-judicial capacity rather than in a legislative capacity," Dis. Op. at 10, it fails to mention any authority that has so read *Londoner*, either in general or in the void for vagueness context.

---

### CONCURRING IN PART, DISSENTING IN PART

---

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part. I part ways with the majority's analysis regarding two of the appellants' claims. I believe that the three fire fighters' as-applied equal-protection challenge and the plaintiffs' void-for-vagueness challenge to the City of Cleveland residency requirement for city employees should be permitted to proceed in court.

### A. Equal Protection

As the majority recognizes, in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the Supreme Court reiterated that plaintiffs may pursue "class of one" equal-protection claims if they "allege[] that [they] have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564. In my view, however, the *Olech* decision should carry far more weight in our decision today than the majority acknowledges. Grace Olech, the plaintiff in that case, claimed that the village required only a fifteen-foot easement from most property owners seeking access to the municipal water supply, and the Court described Olech's complaint as follows:

> Olech asserted that the 33-foot easement demand was "irrational and wholly arbitrary"; that the Village's demand was actually motivated by ill will resulting from the Olechs' previous filing of an unrelated, successful lawsuit against the Village; and that the Village acted either with the intent to deprive Olech of her rights or in reckless disregard of her rights.

*Id.* at 563. The Court concluded that Olech's complaint was sufficient to withstand a motion to dismiss, stating:

> Olech's complaint can fairly be construed as alleging that the Village intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners. The complaint also alleged that the Village's demand was "irrational and wholly arbitrary" and that the Village ultimately connected her property after receiving a clearly adequate 15-foot easement. These allegations . . . are sufficient to state a claim for relief under traditional equal protection analysis.

*Id.* at 565.

The complaint of the three fire fighters is similar in all relevant respects. Like Olech's complaint, the complaint here can "fairly be construed" as alleging that the City of Cleveland intentionally denied residency exemptions to DeVito, Posante, and Sliter though the City granted exemptions to other similarly situated employees. The fire fighters' complaint also alleged that the City of Cleveland had granted residency exemptions "arbitrarily." J.A. at 11, 14-15 (Compl. at ¶¶ 7, 20-22). These allegations are sufficient to state a claim for relief under *Olech*.

Nevertheless, the majority concludes that, "[r]eviewing the entirety of their complaint and their additional briefing papers in the court below, it is impossible to conclude that Appellants have ever proceeded as anything other than a class." Maj. Op. at 4-5. Apparently, the majority has not

read the same complaint and briefing papers that I have. The complaint included particular factual allegations regarding DeVito, Posante, and Sliter, J.A. at 12-14 (Compl. at ¶¶ 8-18), included at least two allegations that the City granted exemptions "arbitrarily," J.A. at 11, 14 (Compl. at ¶¶ 7, 20), and included a specific request for relief relief "as-applied," J.A. at 16 (Compl. at 9). The majority notes that "[t]he defined term **Fire Fighters** includes the Association of Cleveland Fire Fighters and all individual members of Local 93, IAFF," Maj. Op. at 4 n.4, but apparently the majority did not consider the very next paragraph, in which the individual plaintiffs DeVito, Posante, and Sliter are also included in the defined term **Fire Fighters**, *see* J.A. at 10 (Compl. at ¶ 2). Moreover, in addition to addressing all fire fighters as a class at points in their response brief below, J.A. at 60-61, the appellants also argued that the City's applications of the exemption provision, including the denial of exemptions to DeVito, Posante, and Sliter, have been arbitrary and irrational, J.A. at 61-62.[1] Despite the majority's assertion to the contrary, the complaint and additional briefing papers in the court below give fair notice that the three fire fighters made individual claims for relief.

The majority cites *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955 (2007), but if there was any doubt whether *Twombly* altered the pleading requirements, the Supreme Court put that doubt to rest in *Erickson v. Pardus*, --- U.S. ---, 127 S. Ct. 2197 (2007):

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

*Erickson*, 127 S. Ct. at 2200 (quoting *Twombly*, 127 S. Ct. at 1964 (alteration in *Twombly*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint gave the defendants fair notice of the three fire fighters' claims and the grounds upon which they rest. *See id.* If proven, those claims would entitle the three fire fighters to relief. *See Olech*, 528 U.S. at 564. The majority departs from the Supreme Court's consistent and clear directions when it denies the three individual fire fighters the opportunity to proceed in court on their equal-protection claims.

## B. Void for Vagueness

The vagueness doctrine rests on two primary interests—notice to persons affected and standards for enforcement—both of which are implicated here. In one sense, a city employee is on notice of what he or she must do to be granted a residency exemption: convince the City Council that it should grant an exemption. This, however, is the very danger that the vagueness doctrine seeks to prevent: "the exaction of obedience to a rule or standard which was so vague and indefinite as really to be no rule or standard at all." *A.B. Small Co. v. Am. Sugar Ref. Co.*, 267 U.S. 233, 239

---

[1] Rather than engage with my analysis, the majority chides me for not taking into account the fact that DeVito, Posante, and Sliter have never formally requested a waiver from the full City Council—a fact, of course, that the majority also does not include in its analysis, and a fact on which even the defendants do not rely in their arguments on appeal. The majority also states that the appellants did not argue on appeal the position that I take here, but the appellants' brief states, for example:

> In addressing the claims of the individually named Fire Fighters, DeVito, Posante and Sliter, the District Court held as follows:
>
> > At best (and if proved), these allegations can only establish a pattern of denying exemptions to *all* firefighters, while (potentially) allowing City officials in less emergency-related positions to reside outside City limits.
>
> [J.A. at 26 (Dist. Ct. Order at 6)]. However, the Claims of DeVito, Posante and Sliter as enumerated in the Complaint allow for much broader logical inferences than the District Court seemed to infer itself.

Appellants' Br. at 15.

(1925). A city employee may very well perform some act or fail to perform some act which, in the judgment of the City Council, disqualifies that employee from consideration for an exemption from the residency requirement, but the employee has no way of knowing. In this way, the residency-exemption provision may "trap the innocent by not providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (footnote omitted). The majority appears to recognize this problem, but brushes it aside with unquestioning reliance on *Brockert v. Skornicka*, 711 F.2d 1376, 1382 (7th Cir. 1983), a nonbinding decision of another circuit. The *Brockert* court reasoned that "a provision setting forth a few general situations deserving a waiver" would lack the "flexibility necessary to deal with unforeseen, but meritorious requests," but a "broad standard, such as an exemption 'for cause,' would provide little more in the way of guidance or notice than no standard at all." *Id.* (footnotes omitted). It would be eminently feasible, though, for the City of Cleveland to set forth general standards for allowing exemptions from the residency requirement that would provide notice and guidance as well as flexibility. For example, the City could set forth a general standard, an exhasutive or nonexhaustive list of factors to be considered, an exhaustive or nonexhaustive list of general situations warranting or not warranting an exemption from the residency requirement, or some combination thereof. The majority does not even consider these options.

Similarly, section 74(a)'s residency-exemption provision provides no standards whatsoever for its application and enforcement. Although the residency-exemption provision does not delegate policy decisions to police, judges, or juries, it does require the City Council to make individualized determinations in a quasi-judicial capacity. Unlike the county charter provision at issue in *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176 (9th Cir. 1988), cited by the majority, which permitted the county council to call a special election in its discretion, the residency-exemption provision is not a fundamental delegation of *legislative* authority. *See id.* at 1184 & n.13 (noting that the county charter provision did not expose anyone to "risk of being punished for engaging in ill-defined proscribed conduct" in concluding that the provision was not void for vagueness). The dangers of "arbitrary and discriminatory enforcement," *Grayned*, 408 U.S. at 108, are just as prevalent when the City Council makes individualized determinations as they are when the police, judges, or juries make such determinations.[2] I agree with the majority that the vagueness doctrine does not render unconstitutional every provision of law that grants a lawmaking body discretion to pass legislation, but it has been established for at least a century that due process demands heightened protections when a governmental body acts in a quasi-judicial capacity rather than in a legislative capacity. *See Londoner v. City and County of Denver*, 210 U.S. 373, 385-86 (1908). Accepting the allegations in the complaint as true, as we must at this stage of the proceedings, the plaintiffs should be allowed to go forward on their claim that the residency-exemption provision's lack of standards for application and enforcement fails to provide the protections that due process requires.

For all of these reasons, I respectfully dissent from the majority's decision to terminate prematurely the fire fighters' lawsuit. The plaintiffs should be permitted to proceed in court on their claims that the residency provision as applied to the three individual fire fighters violates their equal-protection rights and that the residency-exemption provision is void for vagueness.

---

[2] It is telling that the one case that the majority cites for the proposition that "discretion is often afforded" to municipal governments to make individualized determinations concerned an ordinance that *did* specify criteria that guided that discretion, and state law supplied further limitations. *See Outdoor Commc'ns, Inc. v. City of Murfreesboro*, No. 94-5406, 1995 WL 390303, at *4 (6th Cir. June 30, 1995) (unpublished opinion).